UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHET MICHAEL WILSON, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> vs. <br><br> BETTER MORTGAGE CORP., <br><br> Defendant. | Civil Action No. 1:25-cv-05503-PAE |

**DEFENDANT BETTER MORTGAGE CORP.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT**

John W. McGuinness
Bryce T. Brenda
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10036
Telephone:  (212) 790-4599
Facsimile: (212) 790-4545
jmcguinness@manatt.com
bbrenda@manatt.com

*Attorneys for Defendant*
*Better Mortgage Corp.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

PROCEDURAL HISTORY AND FAC ALLEGATIONS .....................................3

APPLICABLE LEGAL STANDARD ...................................................................5

   I.  Fed. R. Civ. P. 12(b)(6): Failure to State a Claim ............................................5

  II.  Fed. R. Civ. P. 12(f) and 23: Striking Facially Uncertifiable Class Allegations ..................................................................................................6

ARGUMENT .......................................................................................................8

   I.  THE FAC SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM UNDER THE TCPA................................8

    A. Section 227(c) of the TCPA Does Not Apply To Text Messages. ...........8

    B. Plaintiff Fails To Plead Facts Supporting Receipt of a "Telephone Solicitation" Under Section 227(c). ........................................................13

    C. Plaintiff's Request for Treble Damages Should be Dismissed Under Rule 12(b)(6) Because Plaintiff Does Not Allege Willful or Knowing Violation of the TCPA...............................................................................17

  II.  ALTERNATIVELY, PLAINTIFF'S CLASS AND OTHER IMPROPER ALLEGATIONS SHOULD BE STRICKEN UNDER RULES 12(F) AND 23. ..................................................................................................................18

CONCLUSION ..................................................................................................22

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aderhold v. Car2go N.A., LLC,*
2014 WL 794802 (W.D. Wash. Feb. 27, 2014)..................................................15

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).........................................................................................5, 6

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).............................................................................................5

*Bentley v. Verizon Bus. Glob., LLC,*
2010 WL 1223575 (S.D.N.Y. Mar. 31, 2010)....................................................22

*Blount v. D. Canale Beverages, Inc.,*
2003 WL 22890339 (W.D. Tenn. July 23, 2003)...............................................22

*Canary v. Youngevity Int'l, Inc.,*
2019 WL 1275343 (N.D. Cal. Mar. 20, 2019) ...................................................18

*Cholly v. Uptain Grp., Inc.,*
2017 WL 449176 (N.D. Ill. Feb. 1, 2017) ...........................................................7

*Dahdah v. Rocket Mortgage LLC,*
2023 WL 5941730 (E.D. Mich. Sept. 12, 2023 ..................................................13

*Davis v. CVS Pharmacy, Inc.,*
2025 WL 2491195 (N.D. Fla. Aug. 26, 2025)...........................................8, 9, 12

*Davis v. Navient Corp.,*
2018 WL 1603871 (W.D.N.Y. Mar. 12, 2018) .................................................6, 7

*Duran v. La Boom Disco, Inc.,*
955 F.3d 279 (2d Cir. 2020) ..............................................................................10

*Eggleston v. Reward Zone USA LLC,*
2022 WL 886094 (C.D. Cal. Jan. 28, 2022) ......................................................13

*Eldridge v. Pet Supermarket Inc.,*
446 F. Supp. 3d 1063 (S.D. Fla. 2020) ..............................................................15

*Facebook, Inc. v. Duguid,*
592 U.S. 395 (2021)..............................................................................................9

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982).................................................................................6

*Gillam v. Reliance First Capital, LLC*,
2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ...................................2, 13, 17, 19

*Hall-Landers v. New York Univ.*,
2024 WL 5431977 (S.D.N.Y. Dec. 6, 2024) ...............................................18, 19

*Hirsch v. USHealth Advisors, LLC*,
337 F.R.D. 118 (N.D. Tex. 2020)...........................................................20

*Horton v. Tarrant Cty. Hosp. Dist.*,
2022 WL 620950 (N.D. Tex. Mar. 3, 2022)..................................................14

*Hunter v. Time Warner Cable Inc.*,
2019 WL 3812063 (S.D.N.Y. Aug. 14, 2019)....................................................7

*In re Rules & Regulations Implementing the Telephone Consumer
Protection Act of 1991*,
18 F.C.C. Rcd. 14014 (2003)................................................................11

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act
of 1991*,
Report and Order, 7 F.C.C. Rcd. 8752 (1992)...................................................10

*Jones v. Blackstone Med. Servs., LLC*,
2025 WL 2042764 (C.D. Ill. July 21, 2025)............................................8, 9, 11

*Lary v. Trinity Physician Fin. & Ins. Servs.*,
780 F.3d 1101 (11th Cir. 2015) ...........................................................18

*Lindsay Transmission, LLC v. Office Depot, Inc.*,
2013 WL 275568 (E.D. Mo. Jan. 24, 2013) .....................................................19

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)...............................................................9, 11, 12

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
145 S. Ct. 2006 (2025)....................................................................11

*Melito v. Am. Eagle Outfitters, Inc.*,
2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015)....................................................6

*MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*,
655 F. Supp. 3d 193 (S.D.N.Y. 2023) ....................................................16

*Nicholas Greene v. Select Funding, LLC*,
2021 WL 4926495 (C.D. Cal. Feb. 5, 2021) ...............................................14

*Norman v. Northern Ill. Gas Co. Inc.*,
    2014 WL 184774 (N.D. Ill. Jan. 16, 2014)....................................................14, 15

*Payne v. Sieva Networks, Inc.*,
    347 F.R.D. 224 (N.D. Cal. 2024)..........................................................................21

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctr. Ret. Plan v.
    Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) ...................................................................................5

*Pepka v. Kohl's Dep't Stores, Inc.*,
    2016 WL 8919460 (C.D. Cal. Dec. 21, 2016).........................................................6

*Rombough v. Robert D. Smith Ins. Agency, Inc.*,
    2022 WL 2713278 (N.D. Iowa June 9, 2022) ......................................................21

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ...............................................................................10

*Snyder v. Perry*,
    2015 WL 1262591 (E.D.N.Y. Mar. 18, 2015).........................................................3

*Sterling v. Securus Techs., Inc.*,
    2020 WL 2198095 (D. Conn. May 6, 2020)..........................................................18

*Suttles v. Facebook, Inc.*,
    461 F. Supp. 3d 479 (W.D. Tex. 2020) ................................................................14

*Weingrad v. Top Healthcare Options Ins. Agency Co.*,
    2024 WL 4228149 (E.D. Pa. Sept. 17, 2024)..................................................13, 17

*Williams v. Calderoni*,
    2012 WL 691832 (S.D.N.Y. Mar. 1, 2012).........................................................16

*Wilson v. Skopos Fin., LLC*,
    2025 WL 2029274 (D. Or. July 21, 2025).............................................................12

## STATUTES

47 U.S.C. § 227(b) ...............................................................................10, 11, 12

47 U.S.C. § 227(b)(2).....................................................................................11

47 U.S.C. § 227(b)(3)(C)................................................................................17

47 U.S.C. § 227(c)(2).....................................................................................11

47 U.S.C. § 227(c)(5).........................................................................8, 9, 12, 13

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(c)..................................................................................1, 8, 10, 13

47 C.F.R. § 64.1200(c)(2).................................................................................8, 19, 21

47 C.F.R. § 64.1200(f)(15)......................................................................................13

## RULES

Fed. R. Civ. P. 12......................................................................................................7

Fed. R. Civ. P. 12(b)(6)....................................................................................passim

Fed. R. Civ. P. 12(f)......................................................................................16, 20, 22

Fed. R. Civ. P. 23......................................................................................................7, 19

Fed. R. Civ. P.  23(b)(3)...........................................................................................18

## **INTRODUCTION**

On August 29, 2025, the Court granted Plaintiff Chet Michael Wilson ("Plaintiff") an opportunity to amend his pleading, ECF No. 15 ("Order"). In response, Plaintiff filed a First Amended Class Action Complaint (ECF No.16, the "FAC"). Yet, despite having an opportunity to consider Defendant's initial Motion to Dismiss (ECF No. 14), Plaintiff's FAC still fails to remedy several critical shortcomings. The FAC purports to assert a single cause of action against Defendant Better Mortgage Corporation ("Defendant") under Section 227(c) of the Telephone Consumer Protection Act ("TCPA") for text messages allegedly "delivered, or caused to be delivered" to Plaintiff's cell phone number after registration of that number to the National DNC Registry. Plaintiff contends these texts violate the TCPA's Do-Not-Call ("DNC") Registry regulations, 47 C.F.R. § 64.1200(c). However, text messages are not regulated by this provision, and the facts alleged in the FAC create no viable claim under Section 227(c) of the TCPA. Accordingly, Plaintiff's FAC should be dismissed in its entirety, with prejudice.

As an initial matter, a text is not a "call" under Section 227(c) of the TCPA and its implementing regulations and, thus, texts are not covered by the statute. Even if a text were considered a "call" (and it is not), not all calls to phone numbers registered on the National DNC Registry violate the TCPA. Rather, the TCPA prohibits only more than one "telephone *solicitation*" made "by or on behalf of the same entity" in

a 12-month period to a "residential telephone subscriber" who has registered his number on the National DNC Registry. A TCPA National DNC Registry claim requires the inclusion of factual allegations establishing that the communication constitutes a "telephone solicitation." Plaintiff's FAC fails on all accounts and should be dismissed in its entirety on the following grounds:

**First**, the Court should dismiss the FAC in its entirety under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted because text messages did not exist at the time the TCPA was enacted and, therefore, are not "calls" regulated by Section 227(c) of the TCPA and its implementing regulations.

**Second**, the Court should dismiss the FAC in its entirety under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted because Plaintiff fails to allege a National DNC Registry claim or facts supporting the essential elements of such a claim. In this regard, Plaintiff has not pled sufficient non-conclusory facts showing he received any "telephone solicitation" in a 12-month period that was physically initiated "by or on behalf of [Defendant]."

**Third**, Plaintiff seeks treble damages without pleading non-conclusory facts to show that Defendant's alleged conduct was "willful" or "knowing." The absence of such allegations also requires dismissal under Fed. R. Civ. P. 12(b)(6).

As Plaintiff has already had the chance to amend, dismissal should be with prejudice. *See, e.g., Snyder v. Perry*, 2015 WL 1262591, at *12 (E.D.N.Y. Mar. 18, 2015).

**Finally**, the class allegations are so facially inadequate that certification cannot be granted as pled, as common questions of law and fact do not predominate. If the Court does not dismiss the FAC in its entirety, it should strike the improper class allegations under Fed. R. Civ. P. 12(f) and 23.

## PROCEDURAL HISTORY AND FAC ALLEGATIONS

Plaintiff filed his original Complaint on July 2, 2025. *See* ECF No 1. Defendant filed a Motion to Dismiss and/or Strike Plaintiff's Complaint on August 28, 2025. *See* ECF No. 13-14. On August 29, 2025, the Court entered an Order permitting Plaintiff to file an amended complaint. *See* ECF No. 15. Plaintiff then filed an Amended Complaint on September 9, 2025. *See* ECF No. 16. Defendant now brings this Motion to Dismiss and/or Strike Plaintiff's First Amended Complaint.

Plaintiff's relevant, non-conclusory allegations are minimal, even after having the opportunity to amend. Plaintiff alleges that he is and has been the "subscriber" and "customary user" of the "cellular telephone number" (541)-XXX-9999 for "at least"

five years. ECF No. 16 ¶ 8. Plaintiff contends that he "registered his number" on the National DNC Registry "at least 30 days prior to receiving the calls at issue." *Id*. ¶ 15.

According to Plaintiff, Defendant "delivered, or caused to be delivered" text messages to the subject phone number, on April 2, 2022 and April 4, 2022, that were purportedly sent to "advertise and market Defendant's business or services" and named someone other than Plaintiff. *Id*. ¶¶ 16, 17, 29, 30. Plaintiff includes screenshots of two text messages allegedly sent to a person named "Joseph," relating to a pending loan application. *Id*. ¶ 18. Plaintiff contends he "did not give Defendant prior express consent or permission" to text his phone number, "did not request information or promotional materials" from Defendant, and "does not have an established business relationship with Defendant." *Id*. ¶¶ 45-47. He alleges, "[u]pon information and good faith belief," that Defendant "knew or should have known" that the subject phone number was registered with the National DNC Registry. *Id*. at ¶ 49.

Plaintiff purports to bring this claim on behalf of a putative class as follows:

> All persons throughout the United States (1) who did not provide their telephone number to Better Mortgage Corp., (2) to whom Better Mortgage Corp. delivered, or caused to be delivered, more than one voice message or text message within a 12-month period, promoting Better Mortgage Corp. goods or services, (3) where the person's residential telephone number had been registered with the National Do Not Call Registry for at least thirty days before Better Mortgage Corp. delivered, or caused to be delivered, at least two of the voice messages or text messages within the 12-month period, (4) within four years preceding the date of this complaint and through the date of class certification.

*Id*. ¶ 20.

The FAC also includes unsupported allegations positing that Defendant purposefully directed messages regarding pending mortgage applications to individuals it knew had submitted no inquiry or application, in an apparent effort to generate business. *See id*. ¶¶ 31-44, 50-60.

## APPLICABLE LEGAL STANDARD

### I.  Fed. R. Civ. P. 12(b)(6): Failure to State a Claim

Fed. R. Civ. P. 12(b)(6) mandates dismissal of a complaint that fails to state a claim for relief. To avoid dismissal, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. (quotation marks and citation omitted); *see also Twombly*, 550 U.S. at 570 (a plaintiff must allege facts that nudge their claims across the line from merely "conceivable" to "plausible"). While the Court must generally accept well-pleaded factual allegations as true, it need not accept legal conclusions couched as fact, unwarranted or unreasonable inferences, or unsupported speculation. *See e.g., Iqbal*, 556 U.S. at 678-79; *Pension Ben. Guar.*

*Corp. ex rel. St. Vincent Catholic Med. Ctr. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 724 (2d Cir. 2013) (affirming dismissal where plaintiff "does not support its [] claim with factual allegations sufficient to elevate it from the realm of mere 'legal conclusions'") (citing *Iqbal*, 556 U.S. at 679); *Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at *3 (S.D.N.Y. Nov. 30, 2015) ("[L]egal conclusion[s] couched as a factual allegation" will not prevent dismissal.).

## II.    Fed. R. Civ. P. 12(f) and 23: Striking Facially Uncertifiable Class Allegations

It is well settled that "[s]ometimes the issues are plain enough from the pleadings" to determine that a case should not proceed as a class action and, thus, that a court may properly resolve class issues at the pleadings stage on a defendant's motion to strike before the plaintiff has moved to certify. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also Davis v. Navient Corp.*, 2018 WL 1603871, at *5 (W.D.N.Y. Mar. 12, 2018) (finding that a motion to strike class allegations is "'procedurally permissible' at the pleading stage.") *report and rec. adopted*, 2019 WL 360173 (W.D.N.Y. Jan. 29, 2019) (collecting cases).

Courts routinely find proposed classes to be uncertifiable and strike them at the pleadings stage, where *inter alia*, it is apparent that common questions of law or fact do not predominate and individualized determinations would be required. *See, e.g., Pepka v. Kohl's Dep't Stores, Inc.,* 2016 WL 8919460, at *1-5 (C.D. Cal. Dec. 21, 2016) (granting motion to strike TCPA class allegations on pleadings because "no

matter what … discovery might show, the fact remains Plaintiff's allegations require an individualized inquiry into questions such as which of the class members granted consent in the first place, who among that group revoked consent, and whether such revocation was proper and put Defendant on notice."); *Cholly v. Uptain Grp., Inc.*, 2017 WL 449176, at *4 (N.D. Ill. Feb. 1, 2017) (granting motion to strike TCPA class allegations on pleadings where individualized inquiries regarding revocation of consent would predominate); *see also Davis*, 2018 WL 1603871, at *5 (granting Rule 12 motion to strike and finding plaintiffs' allegations insufficient "to show that it is plausible that plaintiffs will be able to satisfy the Rule 23 requirements after conducting discovery," where individualized inquiries regarding fraud claims predominated). Courts have consistently denied class certification where individualized consent inquiries predominate. *See, e.g., Hunter v. Time Warner Cable Inc.,* 2019 WL 3812063, at *17 (S.D.N.Y. Aug. 14, 2019) ("In joining the chorus of other courts faced with TCPA class actions that have found such individualized inquiries on the consent issue precluded class certification, the Court finds itself in good company."). Courts have also stricken TCPA class allegations at the pleadings stage for this reason. *See, e.g.*, *Davis*, 2018 WL 1603871, at *5.

# ARGUMENT

## I. THE FAC SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM UNDER THE TCPA.

Plaintiff's FAC asserts a single cause of action for violation of Section 227(c) of the TCPA, and its related regulations, which prohibit "initiat[ing]" more than one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). As shown below, Plaintiff's claim fails for several reasons.

### A. Section 227(c) of the TCPA Does Not Apply To Text Messages.

Section 227(c)(5) of the TCPA provides a private right of action to "[a] person who has received more than one *telephone call* within any 12-month period … in violation of the regulations prescribed under this subsection …." 47 U.S.C. § 227(c)(5) (emphasis added). This section of the TCPA "does not mention text messages or SMS messages, and nowhere does the TCPA define 'telephone call' to include text and/or SMS messages." *Jones v. Blackstone Med. Servs., LLC*, 2025 WL 2042764, at *5 (C.D. Ill. July 21, 2025); *see also See Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195, at *2–3 (N.D. Fla. Aug. 26, 2025) (similarly ruling that the term "telephone call" is not defined to include text messages). The implementing regulations enacted by the Federal Communications Commission ("FCC") under Section 227(c) reference only "telephone solicitations" and are likewise devoid of

any reference to text messages. *See* 47 C.F.R. § 64.1200(c). These terms must be interpreted in the context in which the TCPA was enacted in 1991. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 405 (2021).

"Every statute's meaning is fixed at the time of enactment." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (citation omitted). Courts "must interpret what Congress wrote" when the statute was enacted and cannot rewrite the TCPA to update it for modern technology. *Facebook, Inc.*, 592 U.S. at 409. "Text messaging was not an available technology in 1991 [when the TCPA was enacted], and thus 'telephone call' would ***not*** have included text messages or SMS messages." *Jones*, 2025 WL 2042764, at *4 (emphasis added); *see also see also Davis*, 2025 WL 2491195, at *1 (stating the conclusion that a text message is not considered a "telephone call" is "supported by the ordinary public meaning at the time of the provision's enactment"). "Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages." *Jones*, 2025 WL 2042764, at *4; *see also Davis,* 2025 WL 2491195, at *1 (holding: "Certainly, no ordinary person would think of a text message as a 'telephone call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case.").

The FCC's authority to implement regulations under Section 227(c) was limited to "the establishment and operation of a single national database to compile

a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," and which were to issue within nine months from December 20, 1991. 47 U.S.C. § 227(c). Those regulations were implemented in 1992, as authorized, and do not discuss or refer to text messages. 47 C.F.R. § 64.1200(c); *see also In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 7 F.C.C. Rcd. 8752 (1992).

In the FAC, Plaintiff cites *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020), and *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009), for the proposition that a text message is a "call" under the TCPA. *See* ECF No. 16 ¶ 91. However, both decisions evaluated text messages under Section 227(b), which is not at issue in this case. *See Duran*, 955 F.3d at 280 (addressing definition of ATDS under Section 227(b) of the TCPA); *Satterfield*, 569 F.3d at 954 (finding "language and purpose of the TCPA support the conclusion that the ***use of an ATDS*** to make any call, regardless of whether that call is communicated by voice or text, is prohibited") (emphasis added)).

The Ninth Circuit in *Satterfield* also confirmed that "the statute is silent as to whether a text message is a call within the Act" and instead deferred to the FCC's 2003 Order in finding text messages can be considered calls under Section 227(b) of the TCPA. *Id*. While the FCC previously stated in its 2003 Order that, under some circumstances, "calls" do include "text messages," that Order only addressed text

messages in the context of the TCPA's automated calling provision, Section 227(b), which is not at issue in this case. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14115-16 at ¶ 165, n.603-605 (2003); *see also Jones*, 2025 WL 2042764, at *4 ("on its face…, the 2003 Order explicitly references only Section 227(b)"). Moreover, the FCC was not subject to the same limited authority in regard to Section 227(b), as under Section 227(c). *Compare* 47 U.S.C. § 227(b)(2) *with* 47 U.S.C. § 227(c)(2).

Regardless, the FCC's prior 2003 interpretation is not entitled to deference. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006, 2013 (2025) ("[T]he Hobbs Act does not preclude district courts in enforcement proceedings from independently assessing whether an agency's interpretation of the relevant statute is correct."); *see also Loper*, 603 U.S. at 401 (overruling *Chevron* deference, finding "*Chevron* gravely erred [ ] in concluding that the inquiry is fundamentally different just because an administrative interpretation is in play"). Under *McLaughlin* and *Loper*, courts must "independently interpret" statutes under ordinary principles of statutory interpretation—even where the statute delegates discretionary authority to an agency—and must interpret the statute as "if no agency were involved." *Loper*, 603 U.S. at 400.

Applying *McLaughlin* and *Loper* leads to the conclusion that Section 227(c) of the TCPA does **not** extend to communications, like text messages, that did not

exist at the time the TCPA was enacted. *See Jones*, 2025 WL 2042764, at *4-5 ("While the Court affords a certain amount of respect to the FCC's interpretation of the terms used in the TCPA, the fact remains that Section 227(c)(5) of the TCPA includes 'telephone call' and does not mention text messages or SMS messages, and nowhere does the TCPA define 'telephone call' to include text and/or SMS messages.") (citing *Loper* and Alex Fitzpatrick, *How Text Messages Are Being Killed and Replaced*, TIME (Dec. 3, 2014), https://time.com/3612277/text-message-history-future/ ("The world's very first text message, sent Dec. 3, 1992 . . . .")); *see also Davis*, 2025 WL 2491195, at *2 ("[H]owever Congress defines 'telephone solicitation'—and whatever Congress directed the FCC to do in terms of regulating certain 'telephone call[s] or message[s]'—the private right of action Congress created exists only for those who received multiple 'telephone calls.'" (citing 47 U.S.C. § 227(c)(5)).

Accordingly, because Plaintiff's claim relates to text messages, and text messages are not actionable under the National DNC Registry provision, the FAC should be dismissed in its entirety and with prejudice under Rule 12(b)(6).[1]

---

[1] While one district court recently reached a different conclusion, its holding relied heavily on FCC authority relating to Section 227(b) which, again, is not at issue in this case and in any event is not entitled to deference. *See Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4 (D. Or. July 21, 2025).

**B. Plaintiff Fails To Plead Facts Supporting Receipt of a "Telephone Solicitation" Under Section 227(c).**

Beyond the fatal threshold issue discussed above, Plaintiff's National DNC Registry claim also fails because he does not allege sufficient facts supporting an inference that the texts constituted "telephone solicitations," as required to state a claim under Section 227(c). *See* 47 U.S.C. § 227(c)(5); *see also* 47 C.F.R. § 64.1200(c). A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(15).

Federal courts routinely dismiss National DNC Registry claims where the plaintiff fails to plead sufficient facts demonstrating that the calls alleged fit this definition. *See*, *e.g.*, *Gillam v. Reliance First Capital, LLC,* 2023 WL 2163775, at *3 (E.D.N.Y. Feb. 22, 2023) (dismissing where plaintiff "merely conclude[d], without any factual support, that [defendant's] agent 'solicit[ed] refinancing products'"); *Weingrad v. Top Healthcare Options Ins. Agency Co*., 2024 WL 4228149, at *3-4 (E.D. Pa. Sept. 17, 2024) (dismissing where plaintiff "only plead[ed] [that] 'the purpose of the [subject] call was to sell the Plaintiff health insurance" and thus did "not plead a statutory violation without 'further factual enhancement,'" as required by federal pleading standards); *Dahdah v. Rocket Mortgage LLC*, 2023 WL 5941730, at *3 (E.D. Mich. Sept. 12, 2023), *vacated on other grounds by* 2023 WL 11944898 (E.D. Mich. Nov. 17, 2023) (dismissing where subject communications

did not solicit plaintiff to purchase anything); *Eggleston v. Reward Zone USA LLC,* 2022 WL 886094, at *7 (C.D. Cal. Jan. 28, 2022) (dismissing and holding: "Plaintiff simply relies on conclusory labels such as 'advertisement' and 'promotion' without any supporting factual detail. This falls short of Plaintiff's burden to plead sufficient factual matter to state a plausible claim" under Section 227(c)); *Nicholas Greene v. Select Funding, LLC,* 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021) (dismissing where plaintiff did not allege content of the calls, such "that would allow the Court to reasonably infer" they were all "telephone solicitations").

This is particularly true where (as here) the content of the communication, as pled, is not indicative of a solicitation or telemarketing on its face. *See, e.g.*, *Suttles v. Facebook, Inc.,* 461 F. Supp. 3d 479, 482-83 (W.D. Tex. 2020) (dismissing, finding subject texts were not "telephone solicitations" where they did not encourage plaintiff to make a purchase); *Horton v. Tarrant Cty. Hosp. Dist.,* 2022 WL 620950, at *2 (N.D. Tex. Mar. 3, 2022) (dismissing on this basis, finding text was not a "telephone solicitation" because, "[o]n its face, the message is informational and says nothing about purchasing any product or service"; and noting that "even if the alleged text message contained a link to [the defendant's] website, that link does not transform an informational message into an advertisement.") (citations omitted); *see also Norman v. Northern Ill. Gas Co. Inc.*, 2014 WL 184774, at *2 (N.D. Ill. Jan. 16, 2014) (dismissing where plaintiff failed to allege that defendant "encouraged the purchase

-14-

or rental or investment in any goods or services" despite multiple alleged calls from defendant with knowledge that plaintiff was not the correct party).

Here, none of the alleged text messages of which Plaintiff complains, per the screenshots in the FAC, offered to sell Plaintiff any goods or services—to the contrary, the texts request information *from* the intended recipient relating to a previously submitted loan application. *See* ECF No. 16 ¶ 18. Such content is transactional (i.e., informational) and does **not** constitute a "telephone solicitation," upon which Plaintiff can assert a DNC Registry claim. *See, e.g., Aderhold v. Car2go N.A., LLC*, 2014 WL 794802, at *9 (W.D. Wash. Feb. 27, 2014) (dismissing where subject text only urged plaintiff to complete a registration, regardless of whether plaintiff provided consent); *see also Eldridge v. Pet Supermarket Inc.*, 446 F. Supp. 3d 1063, 1068 (S.D. Fla. 2020) (dismissing where "[n]either of these texts promoted any of [defendant's] products or services, or referenced shopping or purchasing. And the mere fact that the texts . . . may encourage him to purchase Defendant's products in the future, is simply too attenuated to give rise to a clear, unequivocal implication of advertising. Thus, Plaintiff has failed to sufficiently allege that these text messages violate the TCPA.") (internal quotation marks omitted). Even though Plaintiff's name may differ from that of the addressee, *see* ECF No. 16 ¶ 18, this does not change the result. *See Norman*, 2014 WL 184774, at *2 (finding plaintiff failed to adequately allege a "telephone solicitation" where the caller was not encouraging plaintiff to

-15-

make a purchase but was instead attempting to reach someone other than plaintiff).

Plaintiff's FAC adds unsupported allegations that the text messages were somehow solicitations "purpose[fully]" misdirected at those who did not inquire into Defendant's services as a "pretext" to "induce" the recipient to begin or continue a mortgage application. *See* ECF No. 16, ¶¶ 31-44; 50-56.[2] These conclusory allegations, not even asserted upon "information and belief," should be disregarded. Even if alleged "upon information and belief," such allegations would be insufficient as they are not tethered to any facts from which such a belief could be inferred. *See MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*, 655 F. Supp. 3d 193, 204 (S.D.N.Y. 2023) ("[W]hile a plaintiff may plead facts alleged upon information and belief where the belief is based on factual information that makes the inference of culpability plausible, such allegations must be accompanied by a statement of the facts upon which the belief is founded.") (internal quotation marks omitted); *see also Williams v. Calderoni*, 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012) (pleadings based upon information and belief insufficient where plaintiff points to no information that would render his statements anything more than speculative claims or conclusory assertions). Plaintiff's unsupported "intentional misdirection" theory is replete with tenuous inferences pulled from thin air, in a dubious attempt to move the needle from

---

[2] These baseless allegations should also be stricken under Rule 12(f) as "immaterial, impertinent, or scandalous matter."

conclusory to plausible. But Plaintiff does not provide any ***facts*** from which to infer this purported large-scale pattern and practice. Indeed, such a "marketing campaign" would be highly inefficient from any business's perspective, and an individual who never started an application could not "continue" one, contrary to Plaintiff's illogical leap. ECF No. 16, ¶¶ 33, 54. These allegations are entitled to no weight. The screenshots of the actual messages speak for themselves—Plaintiff was not encouraged to pay for anything. *See Gillam*, 2023 WL 2163775, at *3.

In sum, Plaintiff fails to plausibly allege that he received any "telephone solicitation" (let alone more than one) in violation of the TCPA's National DNC Registry provisions. Thus, his claim should be dismissed for this additional reason.

## C. **Plaintiff's Request for Treble Damages Should be Dismissed Under Rule 12(b)(6) Because Plaintiff Does Not Allege Willful or Knowing Violation of the TCPA.**

Plaintiff fails to allege any factual content suggesting that Defendant engaged in "willful" or "knowing" violations of the TCPA. *See* ECF No. 16, ¶ 56, "Prayer". The TCPA allows a court to treble an award of damages under the TCPA "if the fact-finder determines [defendant] 'willfully or knowingly violated' the Telephone Consumer Protection Act." *Weingrad,* 2024 WL 4228149, at *5 (citing 47 U.S.C. § 227(b)(3)(C)). However, Plaintiff includes no ***facts*** to show Defendant's alleged conduct was actually "willful" or "knowing." Plaintiff asks the Court to make this inference in reliance on his baseless theory that Defendant intentionally cold-texted

individuals as part of a mass marketing campaign to encourage recipients to continue applications they had not, in fact, submitted. *See* Section I.B., *supra*. As the request for treble damages is tied only to these conclusory (and entirely unrealistic) allegations, Plaintiff's claim for treble damages must be dismissed as well. *See, e.g., Sterling v. Securus Techs., Inc.*, 2020 WL 2198095, at *6 (D. Conn. May 6, 2020) (dismissing claims of knowing and willful violations as mere legal conclusions unsupported by further specific factual allegations); *Canary v. Youngevity Int'l, Inc.*, 2019 WL 1275343, at *9 (N.D. Cal. Mar. 20, 2019) (dismissing claim for alleged willful/knowing TCPA violations, in part, because it "consist[ed] of nothing more than bare-bones legal conclusions"); *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) (finding plaintiff's "bare assertion . . . that the defendants 'willfully' and 'knowingly' violated the [TCPA]" failed to establish that defendant acted "willfully or knowingly," to be "a legal conclusion, not an allegation of fact that we must accept as true").

## II. ALTERNATIVELY, PLAINTIFF'S CLASS AND OTHER IMPROPER ALLEGATIONS SHOULD BE STRICKEN UNDER RULES 12(F) AND 23.

Under Rule 23(b)(3), "questions of law or fact common to class members must predominate over any questions affecting only individual members[.]" *Hall-Landers v. New York Univ.,* 2024 WL 5431977, at *14 (S.D.N.Y. Dec. 6, 2024). This determination turns on "whether resolution of some of the legal or factual questions

that qualify each class member's case as a genuine controversy can be achieved through generalized proof and whether these particular issues are more substantial than the issues subject only to individualized proof." *Id*. Here, there are at least four issues for which individualized inquiries predominate: (1) whether the purported class member "consented" to be contacted; (2) "residential subscriber" status; (3) whether the purported class member was the subscriber of the phone number and personally registered it on the National DNC Registry; and (4) whether the messages constitute "telephone solicitations."

*First*, while Plaintiff's proposed class does not directly use the word "consent," class membership turns on a class member's not having provided their telephone number to Defendant or having an established business relationship with Defendant. How the putative class members may have "provided" their telephone number(s) or established a business relationship may differ from person to person. Whether, how, and when a person may have made an inquiry or conducted a transaction is yet another context-dependent issue that can vary greatly by individual, and would prevent calls from qualifying as "telephone solicitations" as required for a National DNC Registry claim. 47 C.F.R. § 64.1200(c)(2). Ruling out these exemptions would require an individualized mini-trial for each class member to determine whether that particular class member has a claim or is subject to a recognized exemption. *See Lindsay Transmission, LLC v. Office Depot, Inc.,* 2013 WL 275568, at *4-5 (E.D. Mo. Jan.

24, 2013) (holding "the absence of prior consent and the absence of a prior business relationship" are individualized issues precluding certification under Rule 23). Therefore, this is not a common question that can be resolved by generalized proof across the entire class in a single adjudication. Individualized inquiries are necessary.

In an unavailing attempt to plead that individualized inquiries into consent would not be required, Plaintiff adds conclusory allegations that such inquiries "can be resolved through common proof of Defendant's marketing practices" and by inspecting "records of [Defendant's] text campaigns." ECF No. 16, ¶¶ 57-60.[3] Not only do these allegations lack factual details that could support a plausible inference that Defendant maintains such "uniform practices and records," (*id*. ¶ 60), they fail to detract from the fact that class membership would require individualized inquiries into how consent was provided by each specific putative class member and how consent may have been revoked. An examination of alleged "marketing practices" does not change the fact that the methods by which each individual provided or revoked consent would differ widely from person to person, irrespective of how Defendant may have conducted outreach.

**Second**, individualized inquiries are also required to determine whether each class member utilized their number for "residential" purposes—yet another key

---

[3] These baseless allegations should also be stricken under Rule 12(f) as "immaterial, impertinent, or scandalous matter."

element of any Section 227(c) claim and of Plaintiff's proposed class definition. *See*, *e.g.*, *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 135 (N.D. Tex. 2020) (questions such as residential status "require 'evidence that varies from member to member'"); *Payne v. Sieva Networks, Inc.*, 347 F.R.D. 224, 228 (N.D. Cal. 2024) (denying class certification without evidence where "[r]esolving each phone number's residential status requires a fact-intensive inquiry"). Plaintiff's class definition should be stricken on this additional basis.

**Third**, a National DNC Registry claim requires a "residential telephone subscriber who has registered his or her [own] telephone number" on the National DNC Registry. 47 C.F.R. § 64.1200(c)(2) (emphasis added); *see also Rombough v. Robert D. Smith Ins. Agency, Inc*., 2022 WL 2713278, at *2-4 (N.D. Iowa June 9, 2022). Whether a purported class member was the subscriber of the receiving phone number who personally registered the phone number to the National DNC Registry is yet another individualized inquiry that would be required to determine eligibility for any particular class member to access this claim.

**Fourth**, whether calls received by a purported class member "promot[ed] Better Mortgage Corp. goods or services" (ECF No. 16, ¶ 61) would also require individualized inquiries into the content of the calls. Indeed, as discussed *supra*, Plaintiff fails to allege facts sufficient to meet this standard even for himself. That

same inquiry would need to be made for each purported recipient.

In sum, there are numerous individualized inquiries implicated by Plaintiff's National DNC Registry claim. This predicament is inherent to the nature of the claim Plaintiff seeks to pursue, and apparent from the face of the FAC. No amount of creative pleading can avoid this issue. Accordingly, Plaintiff's class allegations, ECF No. 16, ¶¶ 61-88, should be stricken in full and with prejudice.[4] [5]

## CONCLUSION

For these reasons, Defendant respectfully requests that this Court dismiss Plaintiff's FAC in its entirety under Fed. R. Civ. P. 12(b)(6) and with prejudice. Alternatively, if the FAC is not dismissed in its entirety, Defendant respectfully requests that the Court strike the class allegations, Paragraphs 61-88, under Fed. R. Civ. P. 12(f) and 23.

---

[4] With Plaintiff's proposed class definitions appropriately stricken for the myriad reasons above, all of Plaintiff's remaining class-related allegations are superfluous and immaterial and, as such, should be stricken as well. *See Blount v. D. Canale Beverages, Inc.*, 2003 WL 22890339, at *8 (W.D. Tenn. July 23, 2003) (striking under Rule 12(f) as "immaterial" after dismissal of underlying claims).

[5] Plaintiff also seeks to represent a class of individuals who received "voice message[s]." ECF No. 16 ¶ 61. However, Plaintiff does not allege he received any voice messages and, therefore, lacks standing to represent such a class. *See Bentley v. Verizon Bus. Glob., LLC,* 2010 WL 1223575, at *4 (S.D.N.Y. Mar. 31, 2010) ("A class representative must be a member of the class.").

Dated:  New York, New York  
        September 23, 2025

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By*:  /s/ John W. McGuinness*  
    John W. McGuinness  
    Bryce T. Brenda  
    7 Times Square  
    New York, NY 10036  
    Telephone:  (212) 790-4599  
    Facsimile: (212) 790-4545  
    jmcguinness@manatt.com  
    bbrenda@manatt.com

    *Attorneys for Defendant*  
    *Better Mortgage Corp.*

## <u>CERTIFICATE OF WORD COUNT</u>

This brief complies with the applicable word-count limitation under LR 7-1(c) because it contains 5,346 words.

By:*/s/ John W. McGuinness*