UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHET MICHAEL WILSON, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>BETTER MORTGAGE CORP.,<br><br>Defendant. | Civil Action No. 1:25-cv-05503-PAE |

# DEFENDANT BETTER MORTGAGE CORP.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT

John W. McGuinness
Bryce T. Brenda
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10036
Telephone:  (212) 790-4599
Facsimile: (212) 790-4545
jmcguinness@manatt.com
bbrenda@manatt.com

*Attorneys for Defendant
Better Mortgage Corp.*

## TABLE OF CONTENTS

          **Page**

ARGUMENT ................................................................................................................................... 1

    I.   Section 227(c) of the TCPA Does Not Apply To Text Messages. ..................................... 1

    II.  Plaintiff Has Failed to Sufficiently Allege Receipt of a Telephone Solicitation. ................ 5

    III. Plaintiff Does Not Allege Willful or Knowing Violations of the TCPA ............................ 8

    IV. Plaintiff's Class Allegations Should Be Stricken on Predominance Grounds .................... 8

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page**

### CASES

*Bosley v. A Bradley Hosp. LLC*,
  (S.D. Fla. Sept. 19, 2025)......................................................................................................1

*Brady Schmitendorf, Plaintiff vs. Juicy's Vapor Lounge, Inc.*, 2025 WL 2966205 (D. Kan.
  Oct. 21, 2025) .........................................................................................................................8

*Campbell-Ewald Co. v. Gomez*,
  577 U.S. 153 (2016)................................................................................................................1

*Chesbro v. Best Buy Stores, L.P.*,
  705 F.3d 913 (9th Cir. 2012) ..................................................................................................6

*Dahdah v. Rocket Mortg., LLC*,
  2023 WL 5941730 (E.D. Mich. Sept. 12, 2023).....................................................................7

*Danehy v. Time Warner Cable Enters.*,
  2015 WL 5534094 (E.D.N.C. Aug. 6, 2015)..........................................................................8

*Eldridge v. Pet Supermarket Inc.*,
  446 F. Supp. 3d 1063 (S.D. Fla. 2020) ...............................................................................5, 6

*Facebook, Inc. v. Duguid*,
  592 U.S. 395, 400 n.2 (2021)..................................................................................................1

*Hirsch v. USHealth Advisors, LLC*,
  337 F.R.D. 118 (N.D. Tex. 2020) ...........................................................................................9

*Hulce v. Zipongo Inc.*,
  132 F.4th 493 (7th Cir. 2025) .................................................................................................2

*In Re Reguls. & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
  18 F.C.C. Rcd. 14014 (2003)..................................................................................................5

*In the Matter of Targeting & Eliminating Unlawful Text Messages*,
  37 F.C.C. Rcd. 11618 (2022)..................................................................................................4

*In the Matter of Targeting & Eliminating Unlawful Text Messages Rules & Reguls.
  Implementing the Tel. Consumer Prot. Act of 1991 Advanced Methods to Target &
  Eliminate Unlawful Robocalls*,
  38 F.C.C. Rcd. 12247 (2023)..................................................................................................4

*Lenorowitz v. Mosquito Squad of Fairfield & Westchester Cnty.*,
  2022 WL 4367596 (D. Conn. Sept. 21, 2022) ........................................................................9

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024).......................................................................................................2, 4, 5

*Orea v. Nielsen Audio, Inc.*,
  2015 WL 1885936 (N.D. Cal. Apr. 24, 2015) ....................................................................6, 7

*Payne v. Sieva Networks, Inc.*,
    347 F.R.D. 224 (N.D. Cal. 2024) .................................................................................... 9

*Purl v. United States Dep't of Health & Hum. Servs.*,
    760 F. Supp. 3d 489 (N.D. Tex. 2024) ........................................................................... 4

*Ramirez v. Ghilotti Bros. Inc.*,
    941 F.Supp.2d 1197 (N.D. Cal. 2013) ............................................................................ 9

*Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.*,
    143 F.4th 1331 (11th Cir. 2025) ..................................................................................... 3

*Tel. Solicitations, Autodialed & Artificial or Prerecorded Voice Message Tel. Calls, &
    the Use of Facsimile Machines*,
    8 FCC Rcd. 480 (1993) ................................................................................................... 2

*Whittaker v. Freeway Ins. Servs. Am., LLC*,
    2023 WL 167040 (D. Ariz. Jan. 12, 2023) .................................................................. 7, 8

*Wilson v. Skopos Fin., LLC*,
    2025 WL 2029274 (D. Or. July 21, 2025) ...................................................................... 5

**STATUTES**

47 U.S.C. § 227(a)(4) .......................................................................................................... 2, 3
47 U.S.C. § 227(c)(2) ............................................................................................................... 4

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200(c)(2) ..................................................................................................... 10
47 C.F.R. § 64.1200(f)(15) ...................................................................................................... 6

Under 227(c) of the Telephone Consumer Protection Act ("TCPA"), Congress granted the FCC time-limited authority to enact regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." The time for that rulemaking expired in 1992. Neither the TCPA nor Congress expressly regulated text messages at that time, nor could they, because text messages did not exist. As such, Plaintiff has no claim here. Plaintiff's arguments concerning receipt of a "telephone solicitation" and against Defendant's motion to strike the class allegations are also misplaced. The Court should grant Defendant's Motion and dismiss this action with prejudice.

## ARGUMENT

### I. Section 227(c) of the TCPA Does Not Apply To Text Messages.

Plaintiff argues that "[t]he Supreme Court, every Circuit Court, and the majority of district courts, even after *McLaughlin*, disagree with Defendant's position." S*ee* ECF No. 22 at 4. Yet none of Plaintiff's authorities address whether Section 227(c) extends to texts. *See* ECF No. 22 at 4-5. The Supreme Court in *Campbell-Ewald* evaluated the application of a different provision, Section 227(b), and merely assumed that texts were covered under the TCPA, without any analysis or a decision on the issue. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). Later, in *Facebook, Inc. v. Duguid*, the Supreme Court noted that "[n]either party disputes that the TCPA's prohibition also extends to sending unsolicited text messages," and merely "assume[d] that it does without considering or resolving that issue." 592 U.S. 395, 400 n.2 (2021). Similarly, the defendant in *Bosley v. A Bradley Hosp. LLC* did not contest whether Section 227(c) applied to texts. *See* 2025 WL 2686984, at *5 (S.D. Fla. Sept. 19, 2025) Instead, the *Bosley* court assumed that text messages were covered, without analyzing this issue. In sum, one of Plaintiff's authorities provide a binding interpretation of the statutory term "telephone call" as applicable to texts.

Further, contrary to Plaintiff's suggestion, Congress did not "ratif[y]" Plaintiff's interpretation when it amended the TCPA in 2019 under the TRACED Act. *See* ECF No. 22 at 5. The TRACED Act did not address the treatment of text messages under Section 227(c) either.

Plaintiff concedes that Section 227(c) does not reference texts, but suggests they are still covered because "[t]he statute defines a 'telephone solicitation' in relevant part to mean 'the initiation of a telephone call or message … which is transmitted to any person.'" ECF No. 22 at 6 (citing 47 U.S.C. § 227(a)(4)). Not so. This reference to "message" refers to artificial or prerecorded voice "messages," which were expressly regulated by the TCPA at the time of its enactment. *See Tel. Solicitations, Autodialed & Artificial or Prerecorded Voice Message Tel. Calls, & the Use of Facsimile Machines*, 8 FCC Rcd. 480 (1993).

Plaintiff anachronistically relies on the "contemporary dictionary definitions" of the term "message" to support his argument that the phrase "telephone call or message" includes text messages. *See* ECF No. 22 at 21 at 6-7. However, according to the Supreme Court, the term "message" must be interpreted consistent with Congress's understanding of the term at the time the TCPA was enacted. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) ("Every statute's meaning is fixed at the time of enactment."). As discussed in the Motion, courts have correctly held that the use of "telephone call or message" in Section 227(a)(4) could not have been interpreted in 1991 to include texts, as text messaging did not yet exist. *See* ECF No. 18 at 9.

Plaintiff's reliance on *Hulce* and *Davis v. HSBC Bank* on this front is misplaced, as neither case interprets the term "message" in Section 227(a)(4) to include "text messages." *See* ECF No. 22 at 7. Indeed, the Seventh Circuit in *Hulce* expressly declined to read into the term "telephone solicitation" any "commercial" calls regardless of their purpose because that is not how Congress defined "telephone solicitation." *See Hulce v. Zipongo Inc.*, 132 F.4th 493, 499 (7th Cir. 2025).

The same logic should be followed here—the Court should not read the phrase "telephone call or message" to include a type of messaging technology that did not exist when the TCPA was written.

Further, while Plaintiff seemingly contends that federal courts may interpret statutes in ways not expressly anticipated by Congress (*see* ECF No. 22 at 9), the Supreme Court has expressly declined to do so when interpreting the TCPA. *See Facebook*, 592 U.S. at 409. In *Facebook*, the Supreme Court refused to treat the TCPA as an "agile tool" to address advances in technology, instead holding that it "must interpret what Congress wrote." *Id*. Accordingly, Plaintiff's appropriate audience for such a remedy would be Congress, not the Court. *See id*.

Plaintiff also argues that "[i]t is well established that the word 'call' in the TCPA includes text messages" and that use of the word "call" in neighboring provisions somehow demonstrates that Section 227(c) covers texts. *See* ECF No. 22 at 8-9. Not so. As the *Davis* court recognized, "Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermines [the plaintiff's] position" and "shows that Congress does not use the term 'telephone call' to encompass all 'messages.'" 2025 WL 2491195, at *2. The *Davis* court went further to state that "[a]lthough [the plaintiff] would have me conclude Congress used the term 'telephone call' in § 227(c)(5) and the term 'telephone call or message' in § 227(a)(4) to have identical meanings, courts should 'presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings.'" *Id*. (citing *Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1344 (11th Cir. 2025)).

Plaintiff attempts to distinguish *Davis* and *Jones* based on the "FCC's longstanding interpretation of 'call' to include text messages." *See* ECF No. 22 at 9-10. However, up until 2023, the FCC only applied this interpretation to the TCPA's automated calling provision, Section

227(b), pursuant to which the FCC has open-ended rulemaking authority. *See* ECF No 18 at 11. Such authority is distinct from the time-limited authority provided to the FCC by Congress under Section 227(c). The FCC did not extend the National DNC regulations to texts until 2023, long after the expiration of its Section 227(c) authority in 1992. *See* 47 U.S.C. § 227(c)(2); *In the Matter of Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Advanced Methods to Target & Eliminate Unlawful Robocalls*, 38 F.C.C. Rcd. 12247, 12256-57 (2023).

Regardless, the FCC's interpretation is not dispositive here. While Plaintiff is correct that *McLaughlin* allows lower courts to afford "respect," it does not instruct courts to afford any *deference* to FCC interpretations. *See* 145 S. Ct. at 2015; *see also Davis*, 2025 WL 2491195, at *4; *Jones*, 2025 WL 2042764, at *4-5. Moreover, such respect is "especially warranted when an Executive Branch interpretation was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Loper Bright*, 603 U.S. at 386, 388, 394. The interpretation relied on by Plaintiff is not "contemporaneous" or "consistent" with the TCPA's enactment or the FCC's short-term rulemaking authority under Section 227(c).[1]

---

[1] Plaintiff also argues that the FCC's interpretation should be reviewed under the "arbitrary and capricious" standard. *See* ECF No. 22 at 13. Importantly, the FCC acted beyond its expressly delegated authority to issue such regulations in the first place. *See supra*; *see also courts Purl v. United States Dep't of Health & Hum. Servs.*, 760 F. Supp. 3d 489, 500 (N.D. Tex. 2024). This is a fact Plaintiff conveniently and repeatedly ignores. In any event, the FCC's 2023 ruling was "arbitrary and capricious" because it extended the National DNC Registry provision to texts based upon little more than a cross-reference to its 2003 decision to permit wireless telephone number registrations on the National DNC Registry. *In the Matter of Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Advanced Methods to Target & Eliminate Unlawful Robocalls*, 38 F.C.C. Rcd. 12247, 12257 & n. 31 (2023). The two are not equivalent. Further, the FCC took such action without proper notice and comment, as required under the APA. *See In the Matter of Targeting & Eliminating Unlawful Text Messages*, 37 F.C.C. Rcd. 11618, 11621-22 (2022) (presuming texts were already covered under NDNCR and failing to seek comment on this issue); *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14037-39 (2003)

Plaintiff's cited authorities are also distinguishable, as none involved deference to prior FCC interpretations regarding treatment of texts as calls under Section 227(c). *See* ECF No. 22 at 12. In *Wilson v. Skopos Fin., LLC*, the court relied heavily on FCC authority relating to Section 227(b), which is not at issue here. *See* 2025 WL 2029274, at *4 (D. Or. July 21, 2025). Further, the Second Circuit cases Plaintiff cites predate *McLaughlin* and *Loper* and do not grapple with a post-Hobbs Act, post-*Chevron* deference paradigm. *See* ECF No. 22 at 17-19. The Court should reject Plaintiff's inapposite cases and follow the well-reasoned decisions in *Jones* and *Davis*, which are based on the plain language of the statute and are far more persuasive.

## II. Plaintiff Has Failed to Sufficiently Allege Receipt of a Telephone Solicitation.

Plaintiff argues that the determination of whether the alleged texts constitute "telephone solicitations" should rely on the content of the text itself. *See* ECF No. 22 at 20. Defendant agrees that the content of the texts speak for themselves: they do not seek to encourage the purchase of any products or services. The screenshots in the FAC reflect texts requesting *information* from the intended recipient (i.e., "Joseph") relating to that individual's *previously submitted loan application*. *See* ECF No. 18 at 15. In its Motion, Defendant cites authorities finding that texts urging an individual to complete an application or transaction they previously initiated are transactional, and not telemarketing. *See id* (citing *Aderhold* and *Eldridge*). Tellingly, Plaintiff does not address these cases. Moreover, as Plaintiff admits, the fact the text was apparently delivered to Plaintiff rather than "Joseph" does not alter the classification of the message. *See* ECF No. 22 at 29 ("The TCPA's definition of "telephone solicitation" is objective and turns on the purpose of the message, not the recipient's subjective interpretation. 47 C.F.R. § 64.1200(f)(15).").

---

(addressing texts only in the context of TCPA's automated calling provisions); 5 U.S. Code § 553(b)-(c) (requiring notice and comment).

-5-

Likely recognizing that the content of the texts do not contain any solicitation, Plaintiff adds fabricated characterizations of the texts in an attempt to salvage his pleading. *See* ECF No. 22 at 20. But Plaintiff's "pretext" theory still fails to identify any supporting non-conclusory facts and is not even alleged "upon information and belief." *See* ECF No. 18 at 15. Plaintiff argues that the texts are "clearly trying to promote a future purchase," but points to no specific language supporting this inference; instead, in Opposition, Plaintiff makes up language that appear nowhere in the texts. *See* ECF No. 22 at 22 (stating that the texts included the phrases "move forward" and "finish it together," which they do not). Also, contrary to Plaintiff's contention, the texts did not encourage *Plaintiff* to do anything, as they were directed to "Joseph" and concerned Joseph's application. *See* ECF No. 22 at 21.

Plaintiff argues that the texts need not explicitly mention products or services if solicitation is clear from the context. *See* ECF No. 22 at 20. However, Plaintiff identifies no "context" beyond his baseless "pretext" theory. Nowhere in the texts are potential future purchases of products or services alluded to. Even if they were, "the mere fact that the texts . . . may encourage [Plaintiff] to purchase Defendant's products in the future, is simply too attenuated to give rise to a clear, unequivocal implication of advertising." *Eldridge v. Pet Supermarket Inc.*, 446 F. Supp. 3d 1063, 1068 (S.D. Fla. 2020). Neither of Plaintiff's cited cases support a finding that these texts constitute "telephone solicitations." In *Chesbro*, the texts encouraged the plaintiff to redeem reward points at the defendant's store, which would have required the plaintiff to make an additional purchases— a fact not present here. *See Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012). And in *Orea*, the court found the calls were not "intend[ed] to indirectly encourage Plaintiff to purchase a product or service," because, as here, the calls sought information *from* someone else, and there was "no indication that Plaintiff's [information] will be used by [Defendant] or its

customers to make a future sale to Plaintiff." *Orea v. Nielsen Audio, Inc.*, 2015 WL 1885936, at *3 (N.D. Cal. Apr. 24, 2015). Indeed, the instant case involves a substantially similar fact pattern to *Dhadah*, where the court dismissed plaintiff's DNC claim because "the Complaint allege[d] that [defendant] indicated it was trying to reach someone else, which suggests that the calls had nothing to do with encouraging [plaintiff] to purchase services from" defendant. 2023 WL 5941730, at *3.

Regardless, myriad courts focus on actual content of the calls alone. *Dahdah v. Rocket Mortg., LLC*, 2023 WL 5941730, at *3 (E.D. Mich. Sept. 12, 2023); *see also* ECF No. 18 at 13-14. Plaintiff concedes a second time that the Court's focus should indeed be on the actual content of the communications. *See* ECF No. 22 at 22 ("For example, in *Eggleston* [], the plaintiff "simply relie[d] on conclusory labels such as "advertisement" or "promotion" without any supporting factual detail." . . . So too in *Dahadah*, *Horton*, and *Weingrad*, where no content was pled[.]").

Lastly, Plaintiff's suggestion that inclusion of an NMLS number in the texts somehow renders them solicitations is unavailing. It does not follow that if some regulations may require lenders to include NMLS numbers in marketing communications (although Plaintiff identifies none), then all messages including an NMLS must be a marketing communication. There are many non-telemarketing reasons why an NMLS number would be used (e.g., on business cards, on communications with customers, on loan applications, for multistate licensing). [2] Nor does Plaintiff's cited case *Whittaker* stand for this proposition—that case does not address identifiers at

---

[2] *See* NMLS Reference Guide: About NMLS (Oct. 20, 2025), https://mortgage.nationwidelicensingsystem.org/knowledge/products/nmls/pubs/aboutNMLS/reference/aboutNMLS/maps/topics/aboutNMLS.html; *see also* Required Use of NMLS ID (October 23, 2025), https://mortgage.nationwidelicensingsystem.org/knowledge/products/nmls/pubs/aboutNMLS/reference/aboutNMLS/maps/topics/nmls_uniqueID_requiredUse.html.

all, and the calls there (unlike here) offered to save the plaintiff money with defendant's services. *See Whittaker v. Freeway Ins. Servs. Am., LLC*, 2023 WL 167040, at *2 (D. Ariz. Jan. 12, 2023).

Therefore, Plaintiff has failed to plead the receipt of "telephone solicitations" and the Court should dismiss his claim on this basis.

### III. **Plaintiff Does Not Allege Willful or Knowing Violations of the TCPA.**

Defendant argues that Plaintiff must plead *actual facts* supporting an inference that the alleged violations were willful or knowing. *See* ECF No. 18 at 17-18. Plaintiff does not allege a single fact in this regard. *See id*. Recognizing this shortcoming, Plaintiff references "facts" and "red flags" that do not exist and were never pled. *See* ECF No. 22 at 23-24. Plaintiff falsely states that he alleges Defendant "deliberately failed to scrub that number from its marketing campaigns," "deliberately chose not to implement the most basic compliance measures," made "an intentional business choice to prioritize marketing reach over legal compliance."[3] *See id*. Yet these allegations appear nowhere in the FAC. *See generally* ECF No. 16. At most, Plaintiff ties an inference of "willful" or "knowing" to his baseless and implausible "pretext" theory, which is entirely conclusory and unrealistic from a business perspective. *See* ECF No. 18 at 18; *supra* at 6.

### IV. **Plaintiff's Class Allegations Should Be Stricken on Predominance Grounds.**

Plaintiff's "counterarguments" to Defendant's request that the Court strike his improper class allegations largely ignore the crux of Defendant's argument—i.e., that the very nature of a National DNC Registry claim requires multiple individualized inquiries that would preclude class certification. *See, e.g., Brady Schmitendorf, Plaintiff vs. Juicy's Vapor Lounge, Inc*., 2025 WL 2966205, at *10 (D. Kan. Oct. 21, 2025). It is in the interest of judicial and party economy to strike

---

[3] Moreover, scrubbing is not required where the calls are not telephone solicitations, whether due to their content or by virtue of an applicable exemption, such as an inquiry or transaction created by a loan application. *See Danehy v. Time Warner Cable Enters*., 2015 WL 5534094, at *10 (E.D.N.C. Aug. 6, 2015).

such allegations at the pleadings stage to prevent the parties from having the litigate class issues that will eventually become moot due to the uncertifiable nature of a class for this claim. Defendant identifies four distinct individualized inquiries that would preclude a finding that common questions predominate. *See* ECF No. 18 at 19.

As to the first inquiry, Plaintiff does not address how the issue of consent would not require individualized inquiries (instead focusing on purported affirmative defense and fail-safe arguments, neither of which Defendant presents here). *See* ECF No. 22 at 25-26. As such, Plaintiff has conceded that consent determinations require individualized inquiries that would preclude certification. *See, e.g., Ramirez v. Ghilotti Bros. Inc.*, 941 F.Supp.2d 1197, 1210 (N.D. Cal. 2013) (deeming argument conceded where the opposing party failed to address it in opposition).

As to the second inquiry, Plaintiff does not address whether "residential" use of a phone number would require individualized inquiries. *See* ECF No. 22 at 26-27. Indeed, Plaintiff appears to concede the need for individualized discovery. *See id*. ("[W]hether putative class members' numbers are residential is a factual inquiry suited for discovery and expert analysis."). Plaintiff's single, non-binding case does not specifically analyze the question of whether "residential" use is an individualized inquiry for class certification purposes. *See Lenorowitz v. Mosquito Squad of Fairfield & Westchester Cnty.*, 2022 WL 4367596, at *5 (D. Conn. Sept. 21, 2022). Additionally, Plaintiff's attempt to "distinguish" *Payne* (while ignoring *Hirsch*) falls flat (*see* ECF No. 22 at 27)—Plaintiff merely states that the facts there are not analogous, but offers no challenge to *Payne*'s proposition that "'resolving each phone number's residential status requires a fact-intensive inquiry. And the burden to show the residential status is on [plaintiff],' who, to obtain class certification, must 'advance a viable theory employing generalized proof to establish residential status.'" *Payne v. Sieva Networks, Inc.*, 347 F.R.D. 224, 228 (N.D. Cal. 2024) (quoting *Hirsch v. USHealth Advisors, LLC*,

337 F.R.D. 118, 131 (N.D. Tex. 2020)).

As to the third inquiry, Plaintiff only argues that personal registration need not be shown to support a National DNC Registry claim. *See* ECF No. 22 at 27-28. This is a requirement based on the plain language of 47 C.F.R. § 64.1200(c)(2). Plaintiff's failure to otherwise address the individualized inquiries necessary for this assessment effects yet another concession. *See* ECF No. 18 at 21.

Lastly, Plaintiff fails to meaningfully rebut Defendant's argument that receipt of a "telephone solicitation" would require individualized inquiries. Plaintiff relies on the unsupported hope that the texts are part of a "standardized campaign" with a "uniform commercial purpose" such that this inquiry could rely on common proof. *See* ECF No 22 at 28. Not only is this "pretext" theory baseless, as discussed *supra*, it ignores the fact that the "telephone solicitation" definition contains numerous exemptions (i.e., prior express invitation or permission, established business relationship due to an inquiry in the prior 3 months and/or transaction in the prior 18 months), each of which would require individualized inquiries to determine. *See* ECF No. 18 at 16. In other words, the Court must query whether an exemption applies to prevent application of the National DNC Registry regulations to the recipient in the first place.

## **CONCLUSION**

For these reasons, and those presented in its Motion, Defendant respectfully requests that this Court grant its Motion to Dismiss and/or Strike.

| | |
|---|---|
| Dated:  New York, New York<br>October 23, 2025 | Respectfully submitted,<br><br>MANATT, PHELPS & PHILLIPS, LLP<br><br>By: */s/ John W. McGuinness*<br>John W. McGuinness<br>Bryce T. Brenda<br>7 Times Square<br>New York, NY 10036<br>Telephone: (212) 790-4599<br>Facsimile: (212) 790-4545<br>jmcguinness@manatt.com<br>bbrenda@manatt.com<br><br>*Attorneys for Defendant*<br>*Better Mortgage Corp.* |

## **CERTIFICATE OF WORD COUNT**

This brief complies with the applicable word-count limitation under LR 7-1(c) because it contains 3,307 words.

By: */s/ John W. McGuinness*

-11-